## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| STEPHEN DALLY, individually and on behalf of all others similarly situated, | : <br> : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| PLASTIC OMNIUM AUTO INERGY (USA), LLC, a Michigan limited liability company, | : <br> : <br> : <br> : |
| Defendant. | : |

Case No: 5:23-cv-10877

Hon. Judith E. Levy

Mag. David R. Grand

## UNOPPOSED MOTION FOR APPROVAL OF
## PARTIAL FLSA SETTLEMENT

Plaintiff, Stephen Dally, jointly by and through his attorneys and without opposition from Defendant, Plastic Omnium Auto Inergy (USA), LLC ("Defendant"), respectfully moves this Court for entry of proposed Order Approving Partial FLSA Settlement, attached hereto as Exhibit A, which: (i) grants this motion; and (ii) approves the Parties' Partial Settlement Agreement and Specific Release.  In support of this Unopposed Motion, Plaintiff states as follows:

1.      On April 17, 2023 Plaintiff filed this action asserting a collective action claim for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I), as well as a Rule 23 Unjust Enrichment claims for Defendant's

1

alleged failure to pay for off-the-clock work performed by its hourly employees (Count II).

2.      In general, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours.[1]

3.      After appearance of Defendant's Counsel and through mid September 2023, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of incentive compensation paid by Defendant to employees; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

4.      Ultimately, the Parties decided to submit the case to mediation with nationally respected wage and hour mediator Michael Russell. Prior to the mediation

---

[1] Plaintiff also alleged that Defendant maintains an unlawful time rounding policy that results in its hourly employees not receiving compensation for work they perform off-the-clock each and every shift. That portion of Plaintiff's claims is not covered by this Partial Settlement and the Parties will continue to litigate the merits of the time rounding/off-the-clock claims after this Partial Settlement is effectuated.

Defendant provided Plaintiff with time and pay data. Plaintiff retained an economic expert to analyze the data and to prepare a comprehensive damage analysis.

5.     The Parties attended mediation on January 8, 2024. After several hours, the Parties were unable to reach an agreement.

6.     Over the next few weeks the Parties held multiple meet and confer conferences to discuss resubmitting the case to mediation.

7.     On April 29, 2024 the Parties attend a second mediation with Michael Russell. After several hours, the Parties were again unable to reach an agreement.

8.     With the continued assistance of the mediator, the Parties continued their settlement negotiations during the summer months of 2024.[2] In late summer 2024 the Parties reached a partial settlement covering Plaintiff's regular rate claims.

9.     Over the next few months, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for approval.

10.    At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length, and with the assistance of a well-respected third-party mediator.

11.    Plaintiff now seek this Court's approval of the Parties' Partial Settlement Agreement and Specific Release, attached hereto as Exhibit A.

---

[2] The Parties also negotiated the form of collective notice of Plaintiff's time rounding/off-the-clock claims to the putative collective).

12.    The detailed and material terms of the Partial Settlement Agreement and Specific Release are discussed in the attached Brief in Support of the Unopposed Motion to Approve Partial FLSA Settlement.

13.    In sum, the Partial FLSA Settlement provides that Defendant shall pay a Gross Settlement Amount of $200,000, inclusive of: (i) the issuance of monetary payments in a cumulative amount of $131,152 (Individual Settlement Payments) to putative collective members (Eligible Employees), (ii) payment of attorneys' fees in the amount of $57,848, (iii) reimbursement of litigation expenses in the amount of $1,700, and (iv) payment of settlement administration fees in the amount of $9,300.

14.    The Parties agree that the Partial FLSA Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiff's FLSA regular rate claim.

15.    Thus, Plaintiff respectfully asks this Court to approve the Parties' Partial Settlement Agreement and Specific Release in its entirety.

WHEREFORE, Plaintiff moves this Court for entry of the proposed Order Approving Partial FLSA Settlement, attached hereto as Exhibit A, which: (i) grants this motion; and (ii) approves the Parties' Partial Settlement Agreement and Specific Release.

Dated: February 4, 2025                    Respectfully submitted,

By: */s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| STEPHEN DALLY, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : Case No: 5:23-cv-10877 : |
| v. | : Hon. Judith E. Levy : |
| PLASTIC OMNIUM AUTO INERGY (USA), LLC, a Michigan limited liability company, | : Mag. David R. Grand : : : |
| Defendant. | : |

## BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF PARTIAL FLSA SETTLEMENT

# **TABLE OF CONTENTS**

**FACTUAL BACKGROUND**

    **I.**    **Introduction** ..................................................................................1

    **II.**   **Settlement Terms and Documents** ..........................................3

          A. Individual Settlement Payments...........................................4

          B. Attorneys' Fees, Litigation Expenses and Settlement Administration Fees..................................................................5

          C. Release of Claims.................................................................5

          D. Notice of Settlement of Lawsuit...........................................6

**LAW AND ARGUMENT**

    **I.**    **The Partial Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute**..........................................................................7

          A. No Indicia of Fraud or Collusion Exists ..............................8

          B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval...................................................8

          C. Investigation Was Sufficient to Allow the Parties to Act Intelligently 9

          D. The Risks of Litigation Favor Approval .............................10

          E. Counsel and Named Plaintiff Favor the Agreement ...........11

          F. Absent Class Members' Reaction .......................................11

          G. Settlement is in the Public Interest.....................................12

    **II.**   **The Settlement Distributions are Fair, Reasonable, and Adequate** ..12

          A. Plaintiff's Counsel's Request for Fees and Litigation Expenses is Reasonable and Appropriate in this Case...........................13

               1. The Court Should Adopt the Percentage Approach...............13

               2. The *Ramey* Factors .....................................................15

          B. The Settlement Notice is Adequate.....................................18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Arp v. Hohla & Wyss Ents., LLP*,
  2020 U.S. Dist. LEXIS 207512 (S.D. Ohio Nov. 5, 2020)............................ 14, 17
*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................... 12
*Connectivity Sys. Inc. v. Nat'l City Bank*,
  2011 WL 292008 (S.D. Ohio Jan. 26, 2011) .......................................... 11
*Crawford v. Lexington-Fayette Urban County Government*,
  2008 WL 4724499 (E.D. Ky. Oct. 23, 2008)...................................... 7, 12
*Cruz v. Don Pancho Mkt., LLC*,
  2016 W.L. 4531142 (W.D. Mich. Aug. 23, 2016)................................... 7
*Dewald v. Time Warner Cable Inc.*,
  2021 U.S. Dist. LEXIS 32459 (S.D. Ohio Feb. 16, 2021)...................... 14
*Fegley v. Higgins*,
  19 F.3d 1126 (6th Cir. 1994)................................................................ 13
*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981)............................................................... 12
*Gentrup v. Renovo Servs., LLC*,
  2011 WL 2532922 (S.D. Ohio June 24, 2011) ..................................... 19
*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992)................................................................ 7
*Hebert v. Chesapeake Operating, Inc.*,
  2019 WL 4574509 (S.D. Ohio Sept. 20, 2019) .................................... 14
*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ............................................................................. 18
*In re Cardinal Health Inc. Sec. Litig.*,
  528 F.Supp.2d 752 (S.D. Ohio 2007) ...................................... 13, 14, 15
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ....................................................... 11
*In re Gen. Tire & Rubber Co. Sec. Litig.*,
  726 F.2d 1075 (6th Cir. 1984)............................................................... 10
*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ........................................................ 8
*Lowther v. AK Steel Corp.*,
  2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) .................................... 17
*Mitchell v. Indep. Home Care, Inc.*,
  2019 WL 696941 (S.D. Ohio Feb. 20, 2019)....................................... 17

*Moore v. Aerotek, Inc.*,
  2017 WL 2838148 (S.D. Ohio June 30, 2017) .................................................... 16

*NorCal Tea Party Patriots v. Internal Revenue Serv.*,
  2018 WL 3957364 (S.D. Ohio Aug. 17, 2018) ................................................... 15

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .............................................................................................. 12

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ....................................................................... 13, 15

*Swigart v. Fifth Third Bank*,
  2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................... 14

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010) ................................................................ 11

*UAW v. Ford Motor Co.*,
  2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ................................................ 11

*UAW v. General Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ................................................................................ 7

*Wade v. Werner Trucking Co.*,
  2014 WL 2535226 .............................................................................................. 19

*Wise v. Popoff*,
  835 F. Supp. 977 (E.D. Mich. March 25, 1993) ................................................ 14

*Zambrano v. Motorcity Burger Co.*,
  2017 WL 1477111 (E.D. Mich. Apr. 25, 2017) ................................................... 7

## **<u>Statutes</u>**

29 U.S.C. § 201 ...................................................................................................... 1

29 U.S.C. § 216(b) ............................................................................................... 13

iv

## FACTUAL BACKGROUND

### I.        Introduction

On April 17, 2023 Plaintiff filed this action asserting a collective action claim for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I), as well as a Rule 23 Unjust Enrichment claims for Defendant's alleged failure to pay for off-the-clock work performed by its hourly employees (Count II). [ECF No. 1]. In general, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours.[3] (*Id.*).

After appearance of Defendant's Counsel and through mid September 2023, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of incentive compensation paid by Defendant to employees; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring

---

[3] Plaintiff also alleged that Defendant maintains an unlawful time rounding policy that results in its hourly employees not receiving compensation for work they perform off-the-clock each and every shift. That portion of Plaintiff's claims is not covered by this Partial Settlement and the Parties will continue to litigate the merits of the time rounding/off-the-clock claims after this Partial Settlement is effectuated.

1

resolution via direct negotiations or with the assistance of a mediator. (Exh. B, Stoops Declaration at ¶ 12). Ultimately, the Parties decided to submit the case to mediation with nationally respected wage and hour mediator Michael Russell. Prior to the mediation Defendant provided Plaintiff with time and pay data. Plaintiff retained an economic expert to analyze the data and to prepare a comprehensive damage analysis. (*Id.* at ¶ 13).

The Parties attended mediation on January 8, 2024. After several hours, the Parties were unable to reach an agreement. (*Id.* at ¶ 14). Over the next few weeks the Parties held multiple meet and confer conferences to discuss resubmitting the case to mediation. (*Id.* at ¶ 15).

On April 29, 2024 the Parties attend a second mediation with Michael Russell. After several hours, the Parties were again unable to reach an agreement. (*Id.* at ¶ 16).

With the continued assistance of the mediator, the Parties continued their settlement negotiations during the summer months of 2024.[4] In late summer 2024 the Parties reached a partial settlement covering Plaintiff's regular rate claims. (*Id.* at ¶ 17). Over the next few months, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. (*Id.* at ¶ 18).

---

[4] The Parties also negotiated the form of collective notice of Plaintiff's time rounding/off-the-clock claims to the putative collective).

At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length, and with the assistance of a well-respected third-party mediator. (*Id.* at ¶ 19).

Plaintiff now seek this Court's approval of the Parties' Partial Settlement Agreement and Specific Release, attached hereto as Exhibit A. In sum, the Partial FLSA Settlement provides that Defendant shall pay a Gross Settlement Amount of $200,000, inclusive of: (i) the issuance of monetary payments in a cumulative amount of $131,152 (Individual Settlement Payments) to putative collective members (Eligible Employees), (ii) payment of attorneys' fees in the amount of $57,848, (iii) reimbursement of litigation expenses in the amount of $1,700, and (iv) payment of settlement administration fees in the amount of $9,300.

The Parties agree that the Partial FLSA Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiff's FLSA regular rate claim. Thus, Plaintiff respectfully asks this Court to approve the Parties' Partial Settlement Agreement and Specific Release in its entirety.

## II.     Settlement Terms and Documents

Plaintiff submits the following settlement documents for the Court's approval or entry:

Exhibit A:  Partial Settlement Agreement and Specific Release (with exhibits)

3

Exhibit B:    Declaration of Counsel Kevin J. Stoops

Exhibit C:    Declaration of Counsel Jonathan Melmed

Exhibit D:    (Proposed) Order Approving Partial FLSA Settlement

If approved by the Court, the Partial Settlement will cover Plaintiff and all the Eligible Employees[5] who deposit or otherwise negotiate the Individual Settlement Payments issued to them as part of this Settlement.  (Exh. A at § A (4, 6, 8-9)).

The Gross Settlement Amount is $200,000, inclusive of: (i) the issuance of monetary payments in a cumulative amount of $131,152 (Individual Settlement Payments) to putative collective members (Eligible Employees), (ii) payment of attorneys' fees in the amount of $57,848, (iii) reimbursement of litigation expenses in the amount of $1,700, and (iv) payment of settlement administration fees in the amount of $9,300. (*Id.* at §§ B (1); F).

### A. Individual Settlement Payments

The Individual Settlement Payments are calculated proportionally on each Eligible Employees' alleged damages during the Relevant Period. The list of each Eligible Employee's Individual Settlement Payment is attached as Exhibit B to the

---

[5] Defined as a putative collective member who is identified as an hourly employee who worked for Defendant between April 17, 2020 and July 1, 2023 and is entitled to an Individual Settlement Payment under the terms of the Parties' Partial Settlement Agreement and Specific Release. There are a total of 956 Eligible Employees.

Settlement Agreement. The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (Exh. A at § G(2).

### B. Attorneys' Fees, Litigation Expenses and Settlement Administration Fees

Defendant will pay $57,848 (28.92% of the Gross Settlement Amount) to Plaintiff's Counsel for attorneys' fees. (Exh. B, § F(3)). Additionally, Plaintiff's Counsel will seek to recover litigation expenses incurred in connection with this matter in an amount of $1,700 and $9,300 for settlement administration fees. (*Id.*).

### C. Release of Claims

The negotiating of a settlement check by any Eligible Employee makes them a Participating Plaintiff and provides sufficient consideration for his or her release of claims. (Exh. B, § G(4)). Eligible Employees will have ninety (90) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. (*Id.*). However, settlement checks not cashed or negotiated within 90 days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s). (*Id.*). If any Eligible Employee does not negotiate his or her settlement check within 90 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant. (*Id.*).

The eligible employees will be subject to a specific release of wage and hour claims arising between April 17, 2020 through July 1, 2023. (*Id.* at § H(1)). Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check.

> I knowingly and voluntarily release, waive, and discharge Plastic Omnium Auto Inergy (USA), LLC and all other Released Parties, from all FLSA regular rate of pay claims that accrued during my employment working at Plastic Omnium Auto Inergy (USA), LLC between April 17, 2020 through July 1, 2023.

(*Id.* at § H(2)).

### D. Notice of Settlement of Lawsuit

The Parties will retain a third-party entity (the "Settlement Administrator") to perform the duties necessary to send "Settlement Notices" and Individual Settlement payments to each Eligible Employee. (Exh. B at § D).  "Settlement Notice" means the written notification that each Eligible Employee will receive, which explains the settlement and their right to participate, a copy of which is attached as Exhibit A to the Partial Settlement Agreement**.** (*Id.* at Exh. A).  The Settlement Notice and Individual Settlement Payment shall be mailed by the Settlement Administrator to each Eligible Employee within twenty-one (21) days after the entry of an Order by this Court approving the Parties' Settlement. (*Id.* at § G(1)).

6

## <u>LAW AND ARGUMENT</u>

**I.      The Partial Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.**

It is generally accepted in that "[j]udicial approval of settlement agreements in FLSA cases is necessary for an agreement to be enforceable." *Zambrano v. Motorcity Burger Co.*, 2017 WL 1477111, at *2 (E.D. Mich. Apr. 25, 2017); *see also, Cruz v. Don Pancho Mkt., LLC*, 2016 W.L. 4531142, at *2 (W.D. Mich. Aug. 23, 2016) (internal citation omitted).  As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008).

The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

7

In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594-95 (E.D. Mich. 2006). As shown below and in the Stoops Declaration (Exh. B), the standard supports the Partial Settlement's approval.

### A. No Indicia of Fraud or Collusion Exists

The Parties' respective counsel has extensive experience litigating claims under the FLSA. (*See generally*, Exhs. B and C). The Partial Settlement Agreement was achieved after arms-length and good faith negotiations between the Parties, with a qualified and well-respected mediator's aid. As such, there is no indicia of fraud or collusion.

### B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendant claims that even if Plaintiff could succeed on the merits (which they contend Plaintiff cannot), Plaintiff cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to: (i) whether collective certification

would be granted; (ii) whether liquidated damages would be awarded; and (iii) whether Plaintiff could establish an underlying violation of the FLSA.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Parties would need to engage in extensive briefing and/or oral argument regarding collective certification, decertification, and summary judgment. Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties. The Partial Settlement Agreement, on the other hand, provides prompt, efficient, and substantial relief to Plaintiff and all Eligible Employees, and amplifies the benefits of that relief through the economies of collective resolution.

### C. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Partial Settlement Agreement. Relevant information was exchanged including exhaustive data regarding the Eligible Employee's time and payroll records.  (Exh C., Stoops Decl. at ¶¶ 12-31). Plaintiff's Counsel obtained and reviewed, along with retained expert Econ One Research, Inc., detailed records for the Eligible Employees, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.*). All aspects of the dispute are well-understood, and were competently negotiated, by both sides. (*Id.*).

9

### D. The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial. Plaintiff's claims are based on disputed issues of fact and law and Plaintiff's success at trial is far from guaranteed. In sum, although Plaintiff asserts that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in the merits of their respective clients' positions, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises multiple affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Even if Plaintiff succeeds on the merits of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Additionally, a jury could find that Defendant acted in good faith, and thus not award any liquidated damages. Any of these scenarios could result in a monetary award of less than the amount obtained through this settlement.

### E.  Counsel and Named Plaintiff Favor the Agreement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiff's Counsel believes the settlement is fair, reasonable, and adequate. Plaintiff's Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their client in negotiating the settlement. (*See* Exhs. C and D). The Named Plaintiff has been fully informed and involved in the settlement process and agrees to the Partial Settlement Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### F.  Absent Class Members' Reaction

The absence of class member objections is indicative of class support of a settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, unlike a Rule 23 Class Action settlement, there are no "absent" class members, and each Eligible Employee has the option of opting into this matter. The Eligible Employees are not bound by the Partial

11

Settlement unless they negotiate the Individual Settlement Payment they are issued. As such, any members who choose not to participate are free to do so without taking any action or making any objection.

### G. Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The Partial Settlement ends complex litigation that has been pending for nearly one year and provides substantial relief to the Eligible Employees and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Partial Settlement Agreement's terms are equitable and provide a reasonable resolution to the action. Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the potential putative plaintiffs. In fact, rulings by this Court or a jury verdict could result in a lower recovery for the Eligible Employees if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

### II.    The Settlement Distributions are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All

components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiff and the Eligible Employees.

### A. Plaintiff's Counsel's Request for Fees and Litigation Expenses is Reasonable and Appropriate in this Case.

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

When assessing the reasonableness of a fee award, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 1. The Court Should Adopt the Percentage Approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action.

13

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, *4 (S.D. Ohio Sept. 20, 2019) (*quoting Swigart v. Fifth Third Bank*, 2014 WL 3447947, *5-6 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents., LLP*, 2020 U.S. Dist. LEXIS 207512, at *3 (S.D. Ohio Nov. 5, 2020); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, *8 (N.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective

14

actions in this District...”). Here, the Court should use the preferred method in this district and award a percentage-of-the-fund.

## 2.   The *Ramey* Factors

To ensure a fee is reasonable, courts also analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The *Ramey* factors include: (1) the value of the benefits rendered to the class; (2) society’s stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, *1 (S.D. Ohio Aug. 17, 2018). Moreover, “the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case.” *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fees and costs.[6]

---

[6] Defendant takes no position on Plaintiff’s request for the attorneys’ fees and costs provided in the Settlement Agreement.

First, Plaintiffs' counsel's work resulted in a significant benefit to the Eligible Employees whereby each person will receive Individual Settlement Payment that is based on their hours worked and bonuses paid. To receive this money, the Eligible Employees only need to negotiate their settlement checks, which will be provided to them by a third-party settlement administrator, along with the Settlement Notice. Further, the Court should find that Plaintiff's Counsel obtained an excellent result by way of procuring a settlement equal to 152% of Defendant's total potential liability. (Exh. B, Stoops Decl. at ¶¶ 30-31). Thus, this factor supports the proposed fee award.

Second, it is widely acknowledged that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, 2017 WL 2838148, *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers. In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.*

Third, Class Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiff's Counsel's fee request. *Mitchell v. Indep. Home Care, Inc.*, 2019 WL 696941, *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Plaintiff's Counsel have submitted detailed Declarations in support of the requested attorneys' fees and costs. (Exhs. B and C).

The Court should also be aware that Plaintiff's Counsel's work does not end at settlement approval. Class Counsel frequently spends additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and such additional work is expected in this case.

To date, Plaintiff's Counsel has incurred 201.55 hours and $131,601.40 in attorneys' fees. The requested fee of $57,848 is less than 50% of the lodestar incurred to date. This is well below the acceptable range. *See Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512 at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford

17

representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court should note that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation.

Fifth, as noted above, this was a complex wage and hour collective action. The Court should find that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiff and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court should determine that the requested fees and costs are reasonable, and approve the request for attorneys' fees in the amount of $57,848 and litigation expenses in an amount of $1,700.

## B. The Settlement Notice is Adequate

An FLSA notice must be "accurate and timely" and provide sufficient information so that putative class members "can make informed decisions as to whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The proposed Settlement Notice in this case is timely, accurate, and informative as it provides the following information:

- The definition of the settlement collective;

18

- The nature of the action;

- The claims alleged;

- Information as to how to participate or not participate in the action and settlement;

- Information regarding the attorneys' fees, litigation expenses, and settlement administration fees;

- How the payments were calculated;

- Binding effect of joining the action and settlement;

- The release language involved; and

- Contact information for counsel.

*See Wade v. Werner Trucking Co.*, 2014 WL 2535226, at \*1 (S.D. Ohio June 5, 2014 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at \*3 (S.D. Ohio June 24, 2011) (same).

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff moves this Court for entry of the proposed Order Approving Partial FLSA Settlement, attached hereto as Exhibit A, which: (i) grants this motion; and (ii) approves the Parties' Partial Settlement Agreement and Specific Release.

Dated: February 4, 2025              Respectfully submitted,

19

By: */s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2025, I electronically filed a copy of the foregoing. Notice of this filing will be sent to all parties via the Court's electronic filing system. Parties may access the filing through the Court's system.

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)