# Exhibit A

## PARTIAL SETTLEMENT AGREEMENT AND SPECIFIC RELEASE

This Partial Settlement Agreement and Specific Release (the "Agreement") is entered into by and between Defendant, Plastic Omnium Auto Inergy (USA), LLC ("Defendant") and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties"), and Plaintiff Stephen Dally, on behalf of himself and all putative collective members (collectively "Plaintiffs"). Hereinafter, Plaintiffs and Defendant are referred to collectively as the "Parties" or individually as a "Party."

WHEREAS, on April 17, 2023, Stephen Dally filed a lawsuit against Defendant in the United States District Court for the Eastern District of Michigan, identified as *Dally v. Plastic Omnium Auto Inergy (USA), LLC*, Case No. 2:23-cv-10877 (E.D. Mich.) (the "Lawsuit"). The Lawsuit is assigned to the Honorable Judith E. Levy (the "Court").

WHEREAS, in the Lawsuit, Plaintiffs allege, in sum, a claim of Defendant's willful failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

WHEREAS, Defendant denies and continues to deny the allegations contained in Plaintiffs' Lawsuit or that it violated any federal, state or local law, breached any duty, failed to pay any employees as required by law, or engaged in any other unlawful conduct with respect to any of its employees.  Nevertheless, Defendant desires to **partially** settle the Lawsuit finally on the terms and conditions set forth in this Agreement.

WHEREAS, the Parties have agreed to resolve the FLSA regular rate claims alleged in the Lawsuit by entering into this Agreement and by dismissing only those claims with prejudice (as provided herein).  **The Lawsuit will continue with the FLSA rounding claims intact**.

WHEREAS, the Parties were each represented by attorneys throughout the negotiations that culminated in the settlement and this Agreement, and said attorneys are experienced in handling collective actions arising under the FLSA.

WHEREAS, the Parties agree and acknowledge that this Agreement represents a fair and reasonable compromise of Plaintiffs' FLSA regular rate claims, which the Parties recognize would otherwise require extensive litigation to determine.

WHEREAS, the Parties agree that this Agreement is based upon the exchange of good and valuable consideration between them as set forth more fully herein, the adequacy or sufficiency of which is hereby acknowledged by all Parties.

NOW, THEREFORE, in sole consideration for the promises and covenants set forth herein, the Parties agree as follows:

A.      **Definitions**

1.      "Approval Order" means the order entered by the Court approving this Agreement.

2.      "Attorneys' Fees and Costs" means the amount paid to Plaintiffs' counsel as attorneys' fees and litigation expenses.

3.      "Effective Date" means the date upon which this Agreement is fully executed by all Parties.

4.      "Eligible Employee" means a putative collective member who is identified as an employee who will receive an Individual Settlement Payment under this Agreement.

5.    "Gross Settlement Amount" means the total amount of monies Defendant will pay the Named Plaintiff, the Eligible Employees, and Plaintiffs' counsel.

6.    "Individual Settlement Payment" means each Participating Plaintiff's share of the Net Settlement Amount to be distributed to that individual via a settlement check pursuant to the terms of this Agreement and the Approval Order.

7.    "Net Settlement Amount" means the total amount of monies available to calculate Individual Settlement Payment after subtracting the Service Award and Plaintiffs' Attorney's Fees and Costs from the Gross Settlement Amount.

8.    "Participating Plaintiff" means an Eligible Employee who cashes or otherwise negotiates his or her Individual Settlement Payment and releases his or her claims against Defendant.

9.    "Relevant Period" means the period of time covered for purposes of calculating Individual Settlement Payments and also the period of time for which the release is applicable, which is April 17, 2020 through July 1, 2023.

10.    "Settlement Notice" means the written notification that each Eligible Employee will receive which explains the settlement and their right to participate, a copy of which is attached as *Exhibit A*.

11.    "Settlement Notice Packet" means the mailing Defendant will send to each Eligible Employee containing the Settlement Notice and an Individual Settlement Payment.

**B.    <u>Defendants' Payment Obligations</u>**

1.    <u>Gross Settlement Amount</u>.   In consideration for the release and dismissal with prejudice of the FLSA regular rate claims alleged in the Lawsuit, and other good and valuable

3

consideration, Defendant shall pay a maximum of Two Hundred Thousand Dollars and No Cents ($200,000) to settle the Plaintiffs' FLSA regular rate claims. Subject to the terms of this Agreement, the Gross Settlement Amount is inclusive of payment for: (a) all Eligible Employees, or their respective authorized legal representatives; (b) all Attorneys' Fees and Costs approved by the Court, including those in connection with securing court-approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; and (c) the Participating Plaintiffs' share of applicable federal, state and local taxes required to be withheld by Defendant. The Gross Settlement Amount shall be the maximum amount that Defendant or the Released Parties (as defined below) are required to pay to settle the FLSA regular rate claims alleged in the Lawsuit and assumes 100% of the Eligible Employees cash or otherwise negotiate their checks and become Participating Plaintiffs.

2.      Settlement Administrator and Employer's Withholdings. Plaintiffs will also be responsible for the fees and costs incurred by the Settlement Administrator. Defendant will be responsible for payroll tax obligations and/or the employer's share of taxes for settlement purposes distributed to Participating Plaintiffs.

**C.    Timing of Payments**

1.      Within thirty (30) days after the entry of the Approval Order, Defendant shall pay the entirety of the Gross Settlement Amount, as follows:

a.      Within thirty (30) days after the entry of the Approval Order, Defendant shall pay the aggregate of the Individual Settlement Payments to the Settlement Administrator (via a qualified settlement fund as described below); and

4

b. Within thirty (30) days after the entry of the Approval Order, Defendant shall pay the Attorneys' Fees and Costs to Plaintiffs' counsel, Sommers Schwartz, P.C., via wire transfer.

**D.** **Settlement Administration**

1. <u>Selection of Settlement Administrator</u>. The Settlement Administrator shall be selected by Plaintiffs, subject to approval by Defendant's counsel which shall not be unreasonably withheld.

2. <u>Settlement Administrator Responsibilities</u>. The Settlement Administrator shall be responsible for: (a) determining tax withholding amounts for the Eligible Employees, based on the Individual Settlement Payments; (b) preparing, printing, and disseminating to the Settlement Notice Packet by U.S. First Class Mail (including the Settlement Notice and the Individual Settlement Payments); (c) copying counsel for all Parties on material correspondence and promptly notifying Plaintiffs' counsel of any material requests or communications made by any Eligible Employees who receive the Settlement Notice; (d) withholding and paying all payroll tax obligations of Participating Plaintiffs in accordance and notifying Defendant of the employer's share of payroll tax obligations in accordance with this Agreement; (e) issuing W-2 and 1099 Forms, as applicable, for all amounts paid to Participating Plaintiffs, Named Plaintiffs, and Plaintiffs' counsel; (f) ascertaining current address and addressee information for each Settlement Notice Packet returned as undeliverable or for which it receives notice that a mailed Settlement Notice Packet was otherwise not delivered; (g) referring to Plaintiffs' counsel all inquiries by the Eligible Employees which the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein; (h) responding to

5

inquiries of the Plaintiffs' and Defendant's counsel; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Settlement Notice Packets and receipt of negotiated checks, returned mail, and other communications and attempted written or electronic communications with the Eligible Employees; (k) confirming in writing to Plaintiffs' and Defendant's counsel its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (l) issuing unclaimed (retained) funds in accordance with this Agreement; and (m) such other tasks as the Parties mutually agree.

3.    <u>Reporting by Settlement Claims Administrator</u>.   Throughout the administration period, the Settlement Administrator will provide reports to the Parties, upon request by either Party, regarding the status of the distribution of the Settlement Notice Packets to Eligible Employees, the receipt endorsed settlement checks, or any other aspect of the claims administration process.

**E.    <u>Creation and Implementation of a Qualified Settlement Fund</u>**

1.    <u>Establishing the Qualified Settlement Fund.</u>   Funds paid by Defendant pursuant to this agreement shall be deposited in an account established by the Settlement Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, <u>et seq</u>.   The Qualified Settlement Fund shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

2.    <u>Administering the Qualified Settlement Fund</u>.   The Settlement Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the

6

handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments.   The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

3.     <u>Tax Withholding and Reporting</u>.   The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Participating Plaintiff.   The Settlement Administrator shall also be responsible for calculating and timely notifying Defendant of the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare) relating to the wage payments of the Named Plaintiff and each Participating Plaintiff, which will be paid by Defendant. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as liquidated damages or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099.

4.     <u>Communication with Counsel</u>.   Defendant's counsel and Plaintiffs' counsel are authorized to communicate directly with the Settlement Administrator to expedite the settlement administration process.

**F.     <u>Allocation of the Gross Settlement Amount</u>**

1.     <u>Net Settlement Amount.</u>   The amounts approved by the Court for Attorney's Fees and Costs (including settlement administration costs) shall be deducted from the Gross Settlement Amount to determine the amount of the Net Settlement Amount.

2.     <u>Allocation of Net Settlement Amount.</u>   All Eligible Employees shall be paid a portion of the Net Settlement Amount pursuant to a formula which will generally differ based on the Defendant's payroll data. For the purpose of informing Eligible Employees of their Individual

7

Settlement Payment, the estimated respective Individual Settlement Payment for each Eligible Employee shall be disclosed to each Eligible Employee in the Settlement Notice.

3.      <u>Attorneys' Fees and Costs</u>.   Defendant shall pay from the Gross Settlement Amount Plaintiffs' Counsel the amount of Sixty-Eight Thousand Eight Hundred Forty-Eight Dollars and 00/100 Cents ($68,848.00) in attorneys' fees and costs which Parties believe is reasonable in view of the relief obtained and resources involved.   Payment of such attorneys' fees and costs to Plaintiffs' counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Defendant's to pay any person, attorney or law firm for attorneys' fees or costs incurred on behalf of the Named Plaintiff and Participating Plaintiffs.   The Defendant shall report the payment of these Attorney's Fees and Costs to Plaintiffs' counsel on an IRS Form 1099.

**G.      <u>Payments to Eligible Employees</u>**

1.      <u>Timing of Payments.</u>   Within twenty-one (21) days of receipt of the settlement funds, the Settlement Administrator will transmit all Settlement Notice Packets to Eligible Employees via First Class U.S. Mail to the last known address for each Eligible Employee, or such other address provided by the Eligible Employee.

2.      <u>Tax Treatment of the Settlement Payments.</u>   The settlement payments attributed to the Eligible Employees shall be allocated 50 percent to back wages and 50 percent to liquidated damages.   The back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages shall be treated as non-wage income to the

8

Eligible Employees.  Defendant shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages on IRS Form 1099.

3.     <u>Tax Responsibilities, Tax Advice, and Indemnification.</u>     Other than the withholding and reporting requirements set forth herein, the Participating Plaintiffs shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the settlement payments.   Named Plaintiff agrees and acknowledges that he has not relied upon any advice from Defendant's or Plaintiffs' counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and reported as non-wages, Named Plaintiff agrees to hold Defendant harmless for any tax due or owing by him on such payments.

4.     <u>Negotiation of Settlement Checks and Retention.</u>   The negotiating of a settlement check by any Participating Plaintiff provides sufficient consideration for his or her release of claims. Eligible Employees will have ninety (90) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. However, settlement checks not cashed or negotiated within 90 days may be reissued once if the Parties mutually agree. If any Eligible Employee does not negotiate his or her settlement check within 90 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant.

Any funds remaining in the Net Settlement Amount after payment to: (a) Participating Plaintiffs; (b) the Attorney's Fees and Costs to Plaintiffs' Counsel; and (c) applicable withheld federal, state and local income taxes withheld from payments to the Participating Plaintiffs, shall be retained by Defendant.

9

**H.**     **Specific Release of FLSA Regular Rate Claims**

1.     <u>Release of Regular Rate Claim by Plaintiffs</u>. Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss FLSA regular rate claims (only) with prejudice, and he and all Participating Plaintiffs will release Defendant, including any and all of Defendant's predecessors, related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties") from any and all FLSA regular rate claims (only), and related penalties, interest, liquidated damages, attorneys' fees, and costs provided for in this Agreement. This specific release of claims applies from April 17, 2020 through July 1, 2023. Plaintiffs also knowingly and voluntarily waive their rights, if any, to recover and/or receive any additional damages or other relief for any claim brought by the Department of Labor and/or any state or local agency on their behalf related to the FLSA regular rate claims covered by this Agreement. Notwithstanding the foregoing, nothing in this Agreement is intended to operate as, nor shall be construed as, a release or waiver of any rights and/or claims that cannot be released or waived as a matter of law. This release also shall not limit Plaintiffs' ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law. The Lawsuit will continue on Plaintiffs' FLSA rounding claims. This specific release is final and irrevocable.

10

2.     <u>Release Language on Settlement Checks</u>.   Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge Plastic Omnium Auto Inergy (USA), LLC and all other Released Parties, from all FLSA regular rate of pay claims that accrued during my employment working at Plastic Omnium Auto Inergy (USA), LLC between April 17, 2020 and July 1, 2023.

By negotiating the settlement check, all Participating Plaintiffs are fully bound by the specific release described in this Agreement.

3.     <u>No Admission of Liability</u>. By entering into this Agreement, Plaintiffs understand that Defendant does not admit, and specifically denies, any liability or wrongdoing as alleged in the Lawsuit, and that Defendant is entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all FLSA regular rate claims brought by Plaintiffs against Defendant. This Agreement does not constitute an admission by Defendant or by any Released Party of any violation of any federal, state, local or common law or statute. In addition, this Agreement does not constitute an admission by Defendant or any Released Party of any violation of any contract or other legal duty.

## I.     <u>Dismissal of Lawsuit</u>

1.     <u>Stipulated Approval Order</u>. Within 30 days of the Effective Date of this Agreement, the Parties will submit to the Court a motion for approval of this Agreement and a proposed Approval Order. If for any reason the Court will not approve this Agreement as drafted, the Parties agree to work together in good faith to reform this Agreement as necessary in order for it to be approved by the Court. To the extent the Court will not approve this Agreement, and the Parties are unable to reform the Agreement in spite of their good-faith efforts to do so, this Agreement shall be null and void.

2.      <u>Stipulated Order of Dismissal</u>. Upon the Court entering its Approval Order, and the Defendant meeting its financial obligations set forth above, the Parties will sign and submit a stipulated order dismissing the FLSA regular rate claims alleged in the Lawsuit with prejudice (if necessary).

**J.      Miscellaneous**

1.      The Parties agree that this Agreement is enforceable in a court of law. The Parties acknowledge that this Agreement constitutes a complete accord with respect to all claims, demands, or causes of action that have been released by this Agreement and that the Parties' sole remedy for breach of this Agreement is specific enforcement of its terms.

2.      If any court shall determine that any provision herein is unenforceable, the Parties agree that any such provision, or part thereof, shall be reformed and construed consistent with the apparent purpose of the provision in order to avoid its unenforceability or, in the event that reformation is not possible, the provision shall be severed and all remaining provisions shall remain in full force and effect.

3.      Plaintiffs wholly rely upon their own judgment in executing this Agreement. Plaintiff has had an opportunity to consult his attorneys and understand that if he went forward with a claim he could have a better result than that achieved here, the same result as achieved here, or a worse result than that achieved here. Plaintiff has carefully read this Agreement in its entirety and voluntarily and willingly signs the same as a free act.

4.      The Parties agree that this Agreement is to be construed in accordance with the laws of the State of Michigan.

5.      This Agreement may be executed in counterparts and by facsimile or scanned document, each of which shall be considered equally authentic and together shall be deemed to be one in the same document.

6.      The Parties acknowledge that the promises and covenants contained in this Agreement are the sole and total agreement of the Parties with respect to the matters set forth herein; that there are no covenants, promises, agreements or representations with respect to the matters set forth herein other than as contained in this Agreement; and that in accepting the terms of this Agreement, Plaintiffs have not relied upon any promises, covenants, agreements or representations with respect to the matters set forth herein other than as expressed in this Agreement.

7.      The Parties agree that the terms of this Agreement cannot be changed, altered, modified, amended, or added to except in a writing that specifically refers to this Agreement and is signed by the Parties. The Parties expressly waive application of any local, state, federal, or foreign law, statute or judicial decision allowing verbal modifications, amendments, or additions to a contract notwithstanding an express provision requiring a writing signed by the Parties.

8.      This Agreement shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce its terms.

CLARKHILL\279534929

[THIS SPACE INTENTIONALLY LEFT BLANK]

9.      **THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS USED AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT VOLUNTARILY.**

_____          12/13/2024
                                                 _____
Stephen Dally, Named Plaintiff                   Date



Plastic Omnium Auto Inergy (USA), LLC
Defendant

_____          _____
                                                 Date
By: _____

Its: _____

14

9.     THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS USED AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT VOLUNTARILY.

_____

Stephen Dally, Named Plaintiff

_____
Date

Plastic Omnium Auto Inergy (USA), LLC
Defendant

_____

By: Shannon L. Triplette

Its: President OPhobility Americas
                              C - Power

_____
12 - 12 - 24
Date

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| STEPHEN DALLY, individually and on behalf of all others similarly situated, | : : : | Case No: 2:23-cv-10877-JEL-DRG |
| Plaintiff, | : : | Hon. Judith E. Levy |
| v. | : : | |
| PLASTIC OMNIUM AUTO INERGY (USA), LLC, a Michigan limited liability company, | : : : : | |
| Defendant. | : : | |

**NOTICE OF PARTIAL SETTLEMENT**

**A federal court authorized this notice.  This is not a solicitation from a lawyer.**

| 1. | Introduction |
|---|---|

- This Partial Settlement Notice is to inform you about a lawsuit in which you are eligible to receive a payment for damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, to advise how your rights may be affected by participating in the settlement, and to instruct you on the procedure for participating in this partial settlement, if you so choose.

- Plaintiff, Stephen Dally ("Plaintiff"), filed this action against Defendant, Plastic Omnium Auto Inergy (USA), LLC (hereinafter, "Defendant") on behalf of himself and all other current and former hourly employees who worked for Defendant between April 17, 2020 and July 1, 2023.

- Plaintiff alleges that Defendant engaged in unlawful pay practices which amounted to failure to pay overtime in violation of the FLSA. The Parties have agreed to settle part of the lawsuit.

- If you previously submitted a consent to join form related with this lawsuit, you will remain a part of this lawsuit in connection with the remaining claims for time rounding even if you cash this partial settlement check.

- By entering into the partial settlement, Defendant does not admit any liability or wrongdoing.

- The partial settlement is the result of good-faith, arms-length negotiations between the Plaintiffs and the Defendant, through their respective attorneys.  Both sides agree that, in

1

light of the risks and expense associated with continued litigation, this partial settlement is fair and reasonable under the circumstances.

- As part of the partial settlement, Defendant will pay a gross amount of $200,000 to be allocated among you and other eligible employees.  The process of how the settlement amount is being distributed to you and other eligible employees is set forth below in section 2. The Court entered an Order approving the parties' partial settlement agreement (the "Agreement"), including these payments (the "Approval Order"). You are receiving this Notice because you are eligible to participate in the partial settlement and to receive payment from the partial settlement.

- **Enclosed is a check for your share of the partial settlement.** Pursuant to the Court's Approval Order, all Participating Plaintiffs will release certain claims against Defendant, as described in Section 7, below. You have 90 days to cash, deposit, or otherwise negotiate this check, and, if you do so, you will be bound by the terms of the Agreement and have released your legal claims.

- The Court in charge of the case is the United States District Court for the Western District of Michigan, identified as *Dally v. Plastic Omnium Auto Inergy (USA), LLC*, Case No. 2:23-cv-10877.

## 2.        How is the settlement being allocated?

The partial settlement amount of $200,000 was approved by the Court and is being allocated as follows:

(a)    $131,152.00 to be divided among the Eligible Employees, including you.  The allocation formula applicable to the Eligible Employees is described in Section 3, below.

(c)    $57,848.00 for attorneys' fees.  The attorneys' fees compensates your attorneys for the time they spent litigating the claim being settled, during which they have not been paid for this work.

(d)    $11,000.00 for reimbursement of litigation costs. The litigation costs reimburses your attorneys for the amounts they have paid to litigate the claim being settled, such as costs for discovery, experts, mailings, filing fees, settlement administration, etc.

## 3.        How was my Individual Settlement Payment calculated?

Each Eligible Employee's Individual Settlement Payment was calculated from Defendant's payroll data and represents the amount of unpaid overtime you should have received from Defendant in connection with regular rate calculations during the period of April 17, 2020 through July 1, 2023, plus an additional amount for liquidated (double) damages. Each Eligible Employee's Individual Settlement Payment will be allocated from the partial settlement based on the same formula.

2

The amount of all checks representing Individual Settlement Payments which are not timely negotiated/cashed shall returned to Defendant, and the Settlement Administrator shall seek reimbursement from the appropriate taxing authorities of all employer payroll taxes paid on such Individual Settlement Payments.

Your Individual Settlement Payment is: $_____ less applicable payroll taxes.

The parties agreed that, for tax purposes, each Individual Settlement Payment will be allocated fifty percent (50%) each to: (1) wages (to be reported on an IRS Form W-2); and (2) statutory liquidated damages (to be reported on an IRS Form 1099). Participating Plaintiffs will be responsible for the tax consequences of all payments received by them, for filing returns and reporting all income received to state and federal taxing authorities, and for payment of any other applicable taxes due. Counsel for the Parties cannot provide and will not provide any advice regarding your tax obligations. You should seek tax advice as to any amounts you receive pursuant to the settlement from your own tax advisor.

You have 90 calendar days after the issuance of your settlement check to cash, deposit, or otherwise negotiate the settlement check. After that time, the amount of any uncashed settlement checks will be returned to Defendant.

## 4.        Where can I get more information?

You can get more information by contacting the attorneys representing Plaintiffs at:

> Jesse L. Young, Esq.
> Sommers Schwartz, P.C.
> 141 E. Michigan Ave, Suite 600
> Kalamazoo, Michigan 49007
> jyoung@sommerspc.com

## 5.        How did I get involved?

On April 17, 2023, the Named Plaintiffs filed this lawsuit as a collective action. On XXXX, the Court approved the Parties' partial settlement of the lawsuit as an FLSA collective action, and authorized the Plaintiffs to issue this Settlement Notice to you and others, giving Eligible Employees 90 days to cash their checks and join the settlement as Participating Plaintiffs. By cashing the settlement check, you consent to join the lawsuit and the settlement as a Participating Plaintiff.

3

**6.      Why is there a settlement?**

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a partial settlement without Defendant's admission of liability, which brings the dispute over Plaintiffs' FLSA regular rate claims to an end. That way, Plaintiffs and Defendant avoid the cost, delay, and uncertainty of moving forward in litigation of this claim to trial and possible appeals, and the Participating Plaintiffs will receive compensation.

**7.      What legal claims will I release if I participate in the settlement?**

Under the partial settlement, if you cash your check, you cannot sue again or be part of any other lawsuit against Defendant about the FLSA regular rate claims.  It also means that all of the Court's orders will apply to you and legally bind you. The Court has approved the partial settlement reached in this case, and under the terms of the settlement, all Participating Plaintiffs will be bound by the Release.  As set forth in the Agreement:

### Released Claims

"Released Claims" means and refers to any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during your employment with them during the period of April 17, 2020 through July 1, 2023, limited to all FLSA regular rate of pay claims and related penalties, interest, liquidated damages, attorneys' fees, and costs.

### Released Parties

"Released Parties" means and refers to Defendant Plastic Omnium Auto Inergy (USA), LLC and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents.

### Release Period

"Release Period" means and refers to the period from April 17, 2020 through July 1, 2023.

*          *          *

**Please do not call the Court or the Court clerk's office to inquire about this settlement. They will be unable to help you.**

CLARKHILL\279535245